**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROY L. PEARSON, JR. | **:** | |
| 3012 Pineview Court, N.E. | | |
| Washington, D.C. 20018 | **:** | |
| (202) 269-1191 | | |
| | **:** | |
| Plaintiff, | | |
| v. | **:** | |
| | | |
| UNITED STATES DEPARTMENT OF | **:** | |
| EDUCATION, | | **COMPLAINT** |
| 400 Maryland Avenue, S.W. | **:** | **CIVIL ACTION NO: 19-_____** |
| Washington, DC 20202, | | |
| | **:** | |
| and | | |
| | **:** | |
| ELISABETH DEVOS, *in her official* | | |
| *capacity as Secretary of Education*, | **:** | |
| 400 Maryland Avenue, S.W. | | |
| Washington, DC 20202, | **:** | |
| | | |
| Defendants. | **:** | |
| | **:** | |

## COMPLAINT TO REVIEW ADMINISTRATIVE DECISION AND FOR DECLARATORY AND MONETARY RELIEF

## Introduction

1.     Almost thirty-five years ago, in *Northwestern University v. Pearson*, C.A. No. 8285-83 (D.C. Super.Ct. Dec. 20, 1984), plaintiff, Roy L. Pearson, Jr., completely defeated Northwestern University's claim in that litigation that he was "in default in the payment of certain promissory notes [i.e., student loans]." Having once prevailed on the merits, the doctrines of *res judicata* and/or collateral estoppel should have protected Mr. Pearson from having to, thereafter, relitigate or re-argue, with Northwestern University or its successors in interest, issues and claims that were or could have been raised by Northwestern in that case.

1

2.     But that proved not to be the case. Between 1998-2018, as the purported successor in interest to Northwestern University, the U.S. Department of Education ("DOE") certified to the U.S. Department of Treasury that Mr. Pearson had no defenses to student loan claims against him totaling over $28,000.00 – despite the fact that 9/10[th] of that amount was attributable to the already litigated and defeated Northwestern University student loan claims. Based on that patently unlawful certification, on twelve occasions between 1998-2018, the Fiscal Unit of the Department of Treasury and the Finance and Revenue Department of the District of Columbia, "offset" (i.e., seized) a total of $9,841.82 in federal and District of Columbia income tax refunds due to Mr. Pearson.

3.     It was not until 2014 that DOE advised Mr. Pearson that it had established an administrative procedure by which such offsets could be challenged. As a consequence Mr. Pear-son researched and submit formal written objections to the DOE, protesting the on-going offset of his federal and District of Columbia income tax refunds.  In his written statement/testimony he demonstrated not only that he owed no enforceable debt to Northwestern University, but that he also owed no enforceable debt to Southern Illinois University or Lake Forest College. And, even if student loan debts were owed to the latter two colleges they were in such trifling amounts that tax intercepts had satisfied them by March 3, 2006 – some eight years earlier.

4.     To Mr. Pearson's shock, in a Hearing Decision dated November 3, 2014, the Department of Education conclusorily overruled Mr. Pearson's objections -- without addressing any of the indisputable facts (and documentary support for them) and/or binding law that Mr. Pearson had painstakingly set forth in his written objections.

5.     DOE has continued each year, since 2014, to certify to the United States Department of the Treasury that Mr. Pearson owes in excess of $28,000.00 in overdue and unpaid federally insured student loans, as to which he has no legal defense.  And the U.S. Treasury Department and District of Columbia Office of Finance & Revenue have continued to confiscate Mr. Pearson's tax refunds and to send them to the DOE.

6.     Mr. Pearson plans to begin receiving social security retirement benefits in August of 2020, when he will turn 70 years old.  When he does, those funds – which will be his only source of income – will also be subject to the same unlawful offset procedure.  Thus, despite the urgent medical and professional priorities he faces today, he is forced, at least 13 years after he should have been freed from any such requirement, to file this action seeking: (a) review and reversal of the November 3, 2014 Hearing Decision, (b) a money judgment in the amount of the excess tax refunds that were unlawfully seized and (3) an inherently retrospective declaratory judgment that the November 3, 2014 rulings of the DOE were arbitrary, capricious and unlawful.

## JURISDICTION AND VENUE

7.     This court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Administrative Procedures Act, 5 U.S.C. §§ 702 & 706, the Higher Education Act, 20 U.S.C. 1082, 28 U.S.C. § 1346(a)(1) and the Debt Collection Improvement Act, 31 U.S.C. § 3701.  In addition, the Court has jurisdiction to compel an officer or employee of the Department of Education, including the Secretary, to perform his or her duty under 28 U.S. C. § 1361.  The Court also has the authority to order a remedy pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 220l-2202.

8.      This is an action against an officer and agency of the United States.  Therefore, venue is proper in this Court under 28 U.S.C. § 1391(e).  Additionally, venue is proper in this Court because the plaintiff and the Department of Education reside in this judicial district, Secretary DeVos performs her official duties in this judicial district, and many of the events giving rise to this action took place in this judicial district.

9.      This court is authorized to award the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2201, the Administrative Procedures Act, 5 U.S.C. § 706 and the Higher Education Act, 20 U.S.C. § 1082.

## PARTIES

10.     Plaintiff Roy L. Pearson, Jr. is a natural person who resides in Washington, D.C.

11.     Defendant Elizabeth DeVos is the Secretary of the United States Department of Education. In her official capacity, the Secretary of Education has the power to enforce, pay, compromise, waive, or release any claim held by the Department of Education. In this capacity, the Secretary of Education may also certify and refer student loan debts to the Treasury Department for payment by intercepting the alleged defaulted borrower's federal tax refund.

## BACKGROUND

12.     The Department of Education oversees and is responsible for the federal student loan program. 20 U.S.C. § 1070.

13.     Under federal law, federal student loan borrowers may assert acts or omissions by their schools, or the non-existence of a student loan, as a defense to repayment of alleged student loans.

14.     As overseer of the federal student loan program, the Department of Education

possesses extensive extrajudicial collection powers, including the power to garnish alleged federal student loan borrowers' wages and benefits and seize federal tax refunds. *See* 31 U.S.C. § 3716; 31 U.S.C. § 3720A; 31U.S.C. § 3720D.

15.     Like other agencies, the Department of Education relies on the Department of Treasury's Fiscal Service to effectuate a tax offset in service of an alleged debt owed to it.

16.     The federal tax intercept program is authorized by the Debt Collection Improvement Act ("DCIA"), codified at 31 U.S.C. §§ 3701 *et seq.*

17.     Before submitting a debt to the Department of Treasury, the Department of Education must comply with certain notice requirements for the borrower and then certify only legally enforceable debts to the Department of Treasury. 31 U.S.C. §§ 3716, 3720A(b)(3); 31 C.F.R. § 285.2(d); 34 C.F.R. § 30.33.

18.     Prior to certifying a debt to Treasury for tax offset, the Department of Education must make a final determination of legal enforceability, which includes certification that the debt is overdue in the amount stated and that there are no legal bars to collection. 31 U.S.C. § 3720A(b); 31 C.F.R. § 285.2(d)(1)(i); 31 C.F.R. § 285.5(b), (d)(5).

19.     "Legally enforceable" means there has been a final agency determination that the debt, in the amount stated, is due, and there are no legal bars to collection by offset. 31 C.F.R. § 285.5(b).

20.     The Fiscal Service may reject a referral which does contain a proper certification of legal enforceability. 31 C.F.R. § 285.2(d)(5).

21.     After the Department of Education certifies a debt or debts, the Fiscal Service offsets the debtor's tax refund to satisfy the debt(s) in question. 31 C.F.R. § 285.2(b)(2).

22.     Finally, the Fiscal Service informs the debtor of the offset after the offset has oc-

curred. 31 C.F.R. § 285.2(e).

23.     Once the Secretary of Education has notified a debtor of the Secretary's intent to offset an alleged debt, the Secretary may offset future years' tax refunds without providing the debtor with additional pre-deprivation notice. 34 C.F.R. §§ 30.22(d), 30.33(a).

24.     In order to effectuate future offsets, each year, the Secretary of Education must re-certify the debt to the Fiscal Service. This certification must be in writing and must include certification that the debt continues to be legally enforceable. 31 C.F.R. § 285.5(d)(3)(i)(B), (d)(7)(i).

25.     The Department of Education has an ongoing obligation to immediately notify the Fiscal Service of any change in status of the legal enforceability of the debt. 31 C.F.R. § 285.2(d)(4); 31 C.F.R. § 285.5(d)(10)(iv).

26.     The Department of Treasury has an ongoing obligation to use tax offset only for legally enforceable debts. *E.g.*, 31 U.S.C. § 3720A.

# FACTUAL ALLEGATIONS

## I.
## The Plaintiff And The Three Colleges In This Case

27.     As of the date of this filing, plaintiff, Roy L. Pearson, Jr., is 69 years old.

28.     Plaintiff attended Southern Illinois University from June 1968-May 1970.

29.     Plaintiff attended Lake Forest College from August 1970-May 1972.

30.     Plaintiff attended Northwestern University (School of Law) from August 1972-May 1975.

## II.
## The 3 Alleged Northwestern University Student Loans

31.  **1ˢᵗ Alleged Promissory Note**.  Among the records the Department of Education maintains on the plaintiff is an assignment form, recording a "loan guarantee [or loan disbursement] date" of February 19, 1973.   It states that a loan in the amount of $3,450.00 was extended to plaintiff, at an interest rate of 7%.  A "GSA Default Financial Data" form is also among the records the Department of Education maintains on the plaintiff.  It records a default date for the same loan of July 30, 1980.  And among the records the Department of Education maintains on the plaintiff, is a "GSL Default Demographic Data" form, which also records a "default date" for that loan of July 30, 1980.

32.  **2ⁿᵈ Alleged Promissory Note**.  The administrative record also contains a promissory note, made pursuant to the Federal Insured Student Loan Program, in the amount of $2,500.00 (plus "simple interest at the rate of 7 percent per annum on the outstanding balance of such sum"), and naming plaintiff as the "maker" and Northwestern University as the "lender." It purports to have been signed by plaintiff on December 11, 1973.   The promissory note states that it evidenced an advance to the plaintiff in the amount of $2,500.00.

33.  The promissory note also states that plaintiff's obligation to repay the principal, with interest, would begin 9 months after the date he ceased to carry at least one-half the normal full-time academic work load at an "eligible institution. . ."

34.  **3ʳᵈ Alleged Promissory Note**.  And the administrative record contains another promissory note, made pursuant to the Federal Insured Student Loan Program, in the amount of $1,250.00 (plus "simple interest at the rate of 7 percent per annum on the outstanding balance of such sum"), and naming plaintiff as the "maker" and Northwestern University as the "lender."  It purports to have been signed by plaintiff on November 26, 1974.   The promissory note states that it evidences an advance to the plaintiff in that amount.

35.     The promissory note also states that plaintiff's obligation to repay the principal, with interest, would begin 9 months after the date he ceased to carry at least one-half the normal full-time academic work load at an "eligible institution. . ."

36.     Thus, all three alleged Northwestern University promissory notes have the same maturity date and consequent date of default – nine months after plaintiff ceases carrying at least one-half the normal full-time academic work load.

### III.
### *Res Judicata* And The 3 Alleged Northwestern University Student Loans

37.     In 1983 Northwestern University filed the case of *Northwestern University v. Roy L. Pearson,* C.A. No. 8285-83 (D.C. Super. Ct.) in the Superior Court for the District of Columbia.   The administrative record of the hearing before the Department of Education in this matter contains a court-stamped copy of an order entered in *Northwestern University v. Roy L. Pearson,* C.A. No. 8285-83 (D.C. Super. Ct. Dec. 20, 1984).   The authenticity of the December 20, 1984 order is undisputed.  **(ATTACHMENT A)**

38.     One court stamp on the document establishes that the order was entered in open court on December 20, 1984.  And another court stamp establishes that the order was received for docketing by the Civil Clerk's Office of the D.C. Superior Court on December 26, 1984.

39.     The December 20, 1984 order states that Northwestern University's lawsuit against the plaintiff in *Northwestern University v. Roy L. Pearson,* C.A. No. 8285-83 "allege[d plaintiff's] default in the payment of certain promissory notes."  Order at ¶5.

40.     The order then recites Mr. Pearson's efforts to obtain copies of the alleged promissory notes, and any other documents that Northwestern University was relying on to support its claim in the case that Mr. Pearson was in "default in the payment of certain promissory notes":

1.  On July 4, 1984 the defendant [Roy L. Pearson] served and filed interrogatories and requests for production of documents.

2. On July 31 and August 6, 1984, the defendant contacted plaintiff's [Northwestern University's] counsel by telephone and letter in an effort to facilitate the service of the requested discovery.  Plaintiff failed to respond to the communications.

3. On September 5, 1984, defendant filed a motion to compel the overdue discovery.  No opposition to the motion was filed.

4. This court's order compelling discovery required that the overdue discovery be served and filed by November 2, 1984, and that plaintiff pay $85.00 in attorney's fees and costs by the same date.  Plaintiff has filed no other documents since the Courts order.

5. Plaintiff's lawsuit alleges defendant's default in the payment of certain promissory notes.  Plaintiff's failure to provide the requested discovery is conscious and intentional and prejudices defendant in defending against plaintiff's allegations.  The cut-off date for discovery in this matter has now passed.

6. Plaintiff has failed to respond to letters, telephone calls, and a formal order of this Court.  It has not appeared, despite written notice to its counsel, to oppose this application.  The sanction of attorney's fees has been considered and previously imposed.  It has not been paid, nor has discovery been provided.

7. Plaintiff's course of conduct has itself frustrated a decision on the merits and evidences an abandonment of its claims and defenses.  Any sanction other than dismissal of the complaint and entry of a default on defendant's counterclaim would have the undesirable consequence of protracting abandoned litigation and clogging the civil docket of the Superior Court.

41.    After finding and concluding in her order, above, that Northwestern's stone-walling throughout the litigation had prejudiced Mr. Pearson, obstructed justice, and that it conclusively evidenced Northwestern's intent to abandon any claim of default by Mr. Pearson, Judge Colleen Kollar-Kotelly (then a judge in the D.C. Superior Court and now a judge of this court) directed the entry of: (1) a dismissal with prejudice of Northwestern's complaint alleging Mr. Pearson's default in the payment of certain promissory notes and (2) the entry of a default on Mr. Pearson's counterclaim in that case:

It is therefore this 20 day of December, 1984,
    ORDERED, that plaintiff's complaint be and it hereby is, DISMISSED WITH PREJUDICE; and it is,

> FURTHER ORDERED, that a default be, and it hereby is, entered on
> defendant's counterclaim; . . .

Order, *Northwestern University v. Roy L. Pearson,* C.A. No. 8285-83 (D.C. Super. Ct. Dec. 20,

1984).

42.     Despite the almost thirty-five years since the entry of the dismissal with prejudice

of Northwestern's 1983 Complaint alleging plaintiff's "default in the payment of certain promis-

sory notes," the administrative record contains no indication that Northwestern University filed

any challenges to the December 20, 1984 order, or that it sought to appeal it.

43.     Notwithstanding the findings of the court and the dismissal <u>with</u> <u>prejudice</u> of the

Complaint in *Northwestern University v. Roy L. Pearson,* C.A. No. 8285-83 (D.C. Super. Ct.

Dec. 20, 1984), some thirty years later, by letter dated July 17, 2014, plaintiff received a "Debt

Statement"  and an accompanying "Notice of Proposed Treasury Offset" from the U.S. De-

partment of Education.

44.     The *Debt Statement* stated that DOE held defaulted student loans of the plaintiff

which it intended to collect by Treasury offset.   The listed defaulted student loans included

loans in the amounts of $3,450.00, $2,500.00 and $1,250.00 from Northwestern University.

45.     The *Notice of Proposed Treasury Offset* stated, in relevant part, "You have the

right to – Review ED documents regarding the student loan(s) . . ." described in the Debt

Statement.

46.     By letter dated July 31, 2014, plaintiff wrote to the DOE to request "all docu-

ments upon which you rely, including but not limited to the following:"

- The promissory note evidencing each loan;

- Each loan application;

- The documents used by the school or lender to file a claim on the loan guarantee (in the case of a guaranteed student loan), or to assign the loan to the government (in the case of a National Direct/Student Loan or Perkins Loan).

47.   By letter dated September 19, 2014, the DOE's Federal Student Aid office responded to plaintiff's request.  The two page cover letter stated: "Copies of the documents contained in your student loan file are enclosed."  However, the documents enclosed with the letter did not include a promissory note with a "loan guarantee date" of February 19, 1973, in the amount of $3,450.00, at an interest rate of 7%.   Nor did it contain an assignment letter for such a loan.

48.   Under a cover letter dated October 13, 2014, plaintiff submitted a *Request For Review* form, along with his written statement/testimony and attachments to his written statement.

49.   As to the alleged Northwestern University promissory notes, Mr. Pearson demonstrated why the doctrine of *res judicata* provided him with a complete defense.  To that end, the documents he attached included a file-stamped and docketed copy of the two-page Order entered in *Northwestern University v. Roy L. Pearson,* C.A. No. 8285-83 (D.C. Super. Ct. Dec. 26, 1984).   His statement, *inter alia,* pointed out that "[T]he promissory notes that were enclosed [with the DOE's September 19, 2014 letter] did not indicate which promissory notes were associated with which Debt Number.  And there was no promissory note, at all, for an alleged student loan debt in the amount of $3,450.00. . .  These and other reasons the loans are not enforceable debts are summarized on the attached chart."

50.     Plaintiff signed the averment on the *Request For Review* form stating "I state under penalty of law that the statements I have made here are true and accurate to the best of my knowledge."

51.     The *Request For Review* form states: "[Y]our objection will be reviewed, based on information and documents you supply with this form and on records in your loan file."

52.     The DOE subsequently issued a *Hearing Decision* dated November 3, 2014. **(ATTACHMENT B)** Although the Decision stated that "We reviewed the documents you provided and information in the Department's electronic records regarding your account," it made no reference to plaintiff's statement/testimony regarding, and production of, the two-page Order entered in *Northwestern University v. Roy L. Pearson,* C.A. No. 8285-83 (D.C. Super. Ct. Dec. 20, 1984), or to the *res judicata* or collateral estoppel effect of the December 20, 1984 order.

53.     And despite stating: "Because the Department holds the promissory notes and other records supporting the existence of this debt, . . .," the Hearing Decision did not state that the DOE possessed, or that plaintiff had signed, a February 19, 1973 promissory note in the amount of $3,450.00 (plus "simple interest at the rate of 7 percent per annum on the outstanding balance of such sum"), naming plaintiff as the "maker" and Northwestern University as the "lender."  The Hearing Decision, instead, referenced a "loan made under the Federal Family Education Loan Program in the amount of $3,450.00 to attend Northwestern University [in 1980]."

54.     1980 was some five years after plaintiff last attended Northwestern University. Accordingly, no evidence was presented or referenced in the Decision to support its implicit finding that plaintiff attended Northwestern University in 1976, 1977, 1978, 1979 and 1980.

**IV.**
**The 3 Alleged Southern Illinois University Student Loans**

55.     The administrative record contains a promissory note, originally signed by the plaintiff on October 10, 1968.  It has the heading "Promissory Note, National Defense Student Loan, Southern Illinois University."  It identifies the plaintiff as the maker of the promissory note and Southern Illinois University as the institution to whom plaintiff promised to repay the "advances" listed in the *Schedule of Advances* in the note.

56.     The *Schedule of Advances* records plaintiff's signature to three advances, in the amount of $150.00 each, on October 7, 1968, January 3, 1969 and March 25, 1969.

57.     The advances were not made, insured, or guaranteed pursuant to a program authorized by title IV of the Higher Education Act of 1965.  As the text of the promissory note itself states: "All sums advanced pursuant to this note are drawn from a fund created under the National Defense Education Act of 1958 as amended."

58.     The Southern Illinois University promissory note also states that plaintiff's obligation to repay the principal, with interest at 3% per annum, would begin "nine months after the date on which the maker ceases to carry, at an institute of higher education . . . at least one-half the full-time academic work load as determined by the institution granting the loan . . ."

59.     The Truth in Lending Act (TILA), 15 USC 1601, *et seq*., was enacted, and became effective on May 29, 1968, as title I of the Consumer Credit Protection Act (Pub. L. 90-321).  That effective date was 5-10 months *prior* to the date each of the advances recorded in the *Schedule of Advances*.

60.     On October 15, 1982, the Garn-St. Germain Depository Institutions Act of 1982, Pub. L. 97-320, was enacted.  Section 701 of the Act amended the Truth-in-Lending Act to exempt student loans made, insured or guaranteed pursuant to a program authorized by title IV

13

of the Higher Education Act of 1965 from the requirements of the Truth-in-Lending Act and from the disclosure requirements of any state law.  The amendments were made retroactive.

61.     However the loans purportedly extended to plaintiff by Southern Illinois University were not made, insured or guaranteed pursuant to a program authorized by title IV of the Higher Education Act of 1965.  They were, instead, authorized and made pursuant to a program authorized by the National Defense Education Act of 1958.

62.     The National Defense Education Act of 1958 was never incorporated into the Higher Education Act of 1965.  Thus, National Defense Education Act borrowers continued to enjoy the protections of the Truth-in-Lending Act, and of state disclosure laws, both before and after October 15, 1982.

63.     The Truth In Lending Act regulates any person or company that regularly extends, or arranges for the extension of, credit for which the payment of a finance charge in connection with the sale of services for a personal purpose is required.

64.     It is undisputed that in 1968 and 1969 Southern Illinois University regularly extended, or arranged for the extension of, credit for which the payment of a finance charge in connection with the sale of educational services for personal purposes was required.

65.     The TILA, from the date of its enactment, required that the finance charge for each extension of a loan by a creditor to a consumer be disclosed as an "annual percentage rate." The Southern Illinois University promissory note executed by the plaintiff on October 7, 1968, January 3, 1969 and March 25, 1969 did not express the finance charge as an annual percentage rate using the term "annual percentage rate."

66.     There is no evidence in the administrative record that these repeated disclosure violations of the TILA occurred notwithstanding the maintenance of procedures by Southern

Illinois University in 1968 and 1969 that were reasonably adapted to avoid these repeated disclosure violations of the TILA over the six month period between October 1968 and March 1969.

67.    The Southern Illinois University promissory note does not authorize the payment of attorneys' fees or any other fees and charges necessary for the collection of any amount not paid when due.   The sole non-principal and interest charge the promissory note authorized was a "late charge" in the maximum amount of $2.00 per month if an installment payment was late and the school advised plaintiff of the late charge prior to the due date for the next installment.

68.    The administrative record contains no evidence that Southern Illinois University ever imposed a late charge for a late installment payment by the plaintiff or that it advised plaintiff of any late charge prior to the due date for the next installment.

## V.
## The 2 Alleged Lake Forest College Student Loans

69.    The administrative record also contains a promissory note that was first signed by the plaintiff on January 3, 1972.   It has the heading "Lake Forest College, Lake Forest, Illinois, Promissory Note, National Defense Student Loan, Bureau of Higher Education."  It identifies the plaintiff as the maker of the promissory note and Lake Forest College as the institution to whom plaintiff promised to repay the "advances" listed in the *Schedule of Advances* in the note.

70.    The *Schedule of Advances* records plaintiff's signature to two advances, in the amount of $350.00 on January 3, 1972 and $260.00 on March 27, 1972.

71.    The advances were not made, insured, or guaranteed pursuant to a program authorized by title IV of the Higher Education Act of 1965.  As the text of the promissory note itself states: "All sums advanced pursuant to this note are drawn from a fund created under the National Defense Education Act of 1958 as amended."

72.     The Lake Forest College promissory note also states that plaintiff's obligation to repay the principal, with interest at 3% per annum, would begin "nine months after the date on which the maker ceases to carry, at an institute of higher education . . . at least one-half the full-time academic work load as determined by the institution granting the loan . . ."

73.     The Lake Forest College promissory note does  not authorize the payment of attorneys' fees or any other fees and charges necessary for the collection of any amount of the loan that was not paid when due.  The sole non-principal and interest charge the promissory note authorizes is a "late charge" in the maximum amount of $2.00 per month if an installment payment is late; provided the school advised plaintiff of the late charge prior to the due date for the next installment.

74.     The administrative record contains no evidence that Lake Forest College ever imposed a late charge for a late installment payment by the plaintiff or that it advised plaintiff of any late charge prior to the due date for the next installment.

**V.**
**Unlawfully Seized Federal And District of Columbia Tax Refunds**

75.     The total amount of the allegedly defaulted principal for the student loans in this case is $8,360.57 ($350.00 + $260.00+ $150.00+$150.00+$150.00+$3,550.57+ $2,500.00+ $1,250.00).

76.     If the principal amount of the Northwestern University promissory notes ($3,550.57 +$2,500.00+ $1,250.00), are subtracted from that total -- because since December 20, 1984 they have been barred by the doctrine of *res judicata* -- that total is reduced to $1,260.00.

77.     If the principal amounts of the Southern Illinois University promissory note ($150.00+ $150.00+$150.00) are subtracted from the $1,260.00 -- because violations of the Truth In Lending Act and the resulting illegality of the promissory note under Illinois state law

16

are defenses to their collection -- the total is further reduced to $610.00 (which is the principal amount of the remaining January 3, 1972 Lake Forest College promissory note).

78.     The January 3, 1972 Lake Forest College promissory note does  not authorize the imposition of attorneys' fees or any other fees and charges necessary for the collection of any amount of the $610.00 not paid when due.  The sole non-principal and interest charge the January 3, 1972 Lake Forest College promissory note authorizes is a "late charge" in the maximum amount of $2.00 per month if an installment payment is late and the school advised plaintiff of the late charge prior to the due date for the next installment.

79.     The administrative record contains no evidence that Lake Forest College ever imposed a late charge for a late installment payment by the plaintiff or that it advised plaintiff of any late charge prior to the due date for the next installment.

80.     The last grace period for repayment of the $610.00 ended on April 1, 1980 and interest at 3% per annum began running on that date.  Thus, at the end of each subsequent year, beginning in 1981, interest in the amount of another $18.30 was due and added to the principal balance of $610.00.  As of July 20, 2001, the cumulative total came to $994.30 ($610.00 +384.30).

81.     Notwithstanding that relatively *de minimus* amount, on or about the dates below the Fiscal Service of the U.S. Department of Treasury, or the District of Columbia Office of Tax and Revenue (formerly the D.C. Department of Finance And Revenue), offset federal and state tax refunds that were owed to plaintiff, and used them to make involuntary payments on his alleged student loan debts in the total amount of $9,841.82:

| **Date** | **Federal Tax Refund Offset** | **D.C. Tax Refund Offset** |
|----------|-------------------------------|----------------------------|
| 09/20/98 | $40.95 | |
| 07/20/01 | $300.00 | |

17

| 06/25/04 | $506.24 (Resulting Balance: $147.11) | | |
|---|---|---|---|
| 03/03/06 | $1,624.70 | | |
| 07/03/09 | $592.00 | | |
| 12/31/10 | $56.26 | | |
| 04/29/11 | $258.51 | | |
| 04/29/12 | $2,477.00 | | |
| 01/23/13 | $1,536.00 | | |
| 06/20/16 | $349.86 | | |
| 04/29/17 | $1,750.00 | | |
| 04/29/18 | $227.30 | | $123.00 |
| | $9,718.82 | + | $123.00 = $9,841.82 |

82.     When the IRS seized plaintiff's tax refund of $506.24 on June 25, 2004, the balance of plaintiff's debt on the January 3, 1972 Lake Forest College promissory note was reduced to $147.11. Every offset thereafter grossly exceeded that amount, resulting in unlawful offset amounts from 2004-2018 totaling $8,847.52.

## VI.
## Unlawfully Imposed Interest And Other Fees

83.     The November 3, 2014 Hearing Decision concluded that, as of that date, plaintiff owed $15,396.19 in accrued interest and $87.03 in fees, based on overdue and unpaid promissory notes to Southern Illinois University, Lake Forest College and Northwestern in the total principal amount of $8,360.57.

84.     In fact, as of March 3, 2006, plaintiff owed no legally overdue and unpaid promissory notes to either Southern Illinois University, Lake Forest College or Northwestern University.

## VII.
## Invalid Assignments

85.     A Federal agency that is owed a "past-due legally enforceable debt" may refer the debt to the IRS for tax intercept. 31 U.S.C. § 3720A(a), (d); 26 U.S.C. § 6402(d).

86.     The alleged February 19, 1973 or July 13, 1980 Northwestern University promissory note, in the alleged principal amount of $3,450.00, was assigned  to the Department of Education on January 9, 1991 – well after all such alleged debts to Northwestern University had been adjudicated in plaintiff's favor in *Northwestern University v. Roy L. Pearson,* C.A. No. 8285-83 (D.C. Super. Ct. Dec. 20, 1984),

87.     Additionally, it was not past-due when it was assigned because a February 19, 1973 promissory note, signed by the plaintiff as maker, did not and does not exist. For that reason, as well, it was not a legally enforceable debt.

88.     The alleged December 11, 1973 Northwestern University promissory note, in the principal amount of $2,500.00, was assigned by Northwestern University to the U.S. Department of Education on December 29, 1980.

89.     It was not a legally enforceable debt when it was assigned because the doctrine of *res judicata* barred any claim based on it.

90.     The alleged November 26, 1974 Northwestern promissory note, in the principal amount of $1,250.00, was assigned to the U.S. Department of Education on December 29, 1980.

91.     It was not a legally enforceable debt when it was assigned because the doctrine of *res judicata* barred any claim based on it.

92.     The October 10, 1968 Southern Illinois University promissory note, in the total principal amount of $450.00, was assigned by Southern Illinois University to the Department of Education on July 28, 1981.

93.     It was not a legally enforceable debt when it was assigned because the promissory note violated the Truth In Lending Act, and thus under longstanding Illinois law the promissory note was illegal, void and unenforceable on the date it was assigned to the DOE.

# **CAUSES OF ACTION**

## **COUNT I – Violation of the APA 706.2**
### **(Failure To Address Material Issues)**

94.     Plaintiff repeats and realleges each of the foregoing paragraphs, as if fully set forth

herein.

95.     In violation of APA 706.2, the November 3, 2014 Hearing Decision of the DOE

failed to make findings of fact and rulings of law on the following material issues presented by

plaintiff's October 13, 2014 *Objections To Offset Of Federal And/Or State Tax Refunds*:

96.     **No Accounting.** The Decision failed to acknowledge or address plaintiff's demand

for, or to provide, an accounting for the over $20,000.00 in interest and other charges the DOE

alleges plaintiff owed, despite the indisputable fact that: (1) the alleged February 19, 1973 or July

13, 1980 Northwestern University promissory note in the amount of $3,450.00 has never existed,

and thus no interest or other charges  based on it could be due and (2) two of the promissory notes,

totaling $1,050.00, prohibit the imposition of fees or other collection charges, and thus no such

charges based on them could be due (3) the remaining promissory notes are not legally enforce-

able debts, and thus no interest or other charges based on them could be due.

97.     **Southern Illinois University Promissory Note (Oct. 10, 1968)**. The Decision

failed to acknowledge or address the issue of whether  the Southern Illinois University promis-

sory note contains each of the disclosures and terminology required by the Truth In Lending

Act, whether  the Truth In Lending Act was in effect because the SIU promissory note was not

issued pursuant to the Higher Education Act of 1965, and thus whether the promissory note was

legally enforceable in light of longstanding Illinois law holding that the promissory note was il-

legal, void and unenforceable on the date it was assigned to the DOE and certified to the Depart-

ment of Treasury by the DOE.

98.   **Northwestern University Promissory Note (July 13, 1980)**. The Decision failed to acknowledge the issue of whether what it identifies as a July 13, 1980 promissory note has ever existed, and to rule that the failure and inability to produce the promissory note means it is not a legally enforceable debt.

99.   **Northwestern University Promissory Notes (Dec. 1, 1973 & Nov. 26, 1974)**. The Decision failed to acknowledge and address the issue of whether in *Northwestern University v. Roy Pearson*, C.A. No. 8285-83 (D.C. Super. Ct.), Northwestern University's complaint alleging Mr. Pearson's "default in the payment or certain promissory notes" was dismissed *with prejudice* almost thirty-five years ago.  And the Decision therefore failed to rule that the December 1, 1973, November 26, 1974 and alleged July 13, 1980 promissory notes are not legally enforceable debts because the doctrine of *res judicata* was and is a complete bar to the prosecution of all claims that were mature and could have been raised in that litigation.

100.   Plaintiff was entitled to a favorable ruling on each of the above material issues as a matter of undisputed fact and law.  Thus, a reversal and not a remand is appropriate.

**COUNT II –Declaratory Judgment**
**(Non-Certifiability of Each Student Loan)**

101.   Plaintiff repeats and realleges each of the foregoing paragraphs, as if fully set forth herein.

102.   Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that Defendants have violated and continue to violate the Debt Collection Improvement Act by certifying, recertifying and failing to revoke the certification of, the promissory notes in this case as still overdue and legally enforceable student loan debts.

101.   The face of the Southern Illinois University promissory note, the dismissal with prejudice of any claim of a student loan default that Northwestern University could have brought

21

against Pearson in 1983, and the non-existence of any promissory note evidencing a student loan of $3,500.00 from Northwestern University to the plaintiff, completely undermined the legal enforceability, and thus the certifiability for offset, of Plaintiff's alleged student loan debts to those colleges.  Additionally, by March 3, 2006, any conceivable amount owed had been satisfied by offsets.

103.    This indisputable, unrebuttable, and unrebutted evidence precluded certification of the debt by the Secretary of Education for tax offset by the Department of Treasury's Fiscal Service after March 3, 2006.

104.    These circumstances triggered the Secretary of Education's continuous obligation to promptly notify the Fiscal Service of the change in the legal enforceability of Plaintiff's debt.

105.    A declaration that Plaintiff's federal student loan debt is not certifiable for tax refund or other offset would redress the injury to Plaintiff of having post-March 3, 2006 tax refunds seized in payment of his alleged federal student loan debt from Southern Illinois University, Lake Forest College and Northwestern University.

## COUNT III – Violation of the APA 706.2
### (Failure To Address Material Issue)

106.    Plaintiff repeats and realleges each of the foregoing paragraphs, as if fully set forth herein.

107.    No remand for a re-hearing to provide an accounting for how the DOE it arrived at the over $20,000.00 in "accumulated interest and other charges" it necessary.  All of the essential evidence was before the DOE when it conducted the hearing in this matter and the evidence establishes without any doubt that Mr. Pearson is entitled to the relief he seeks.

108.    As a matter of indisputable fact, between 1998-2018 the interest charges could not exceed the $9,718.82 in tax offsets the Department of the Treasury collected from the plaintiff

between 1998-2018. Plaintiff is therefore entitled to a declaratory judgment that when the IRS

seized plain-tiff's tax refund of $506.24 on June 25, 2004, the balance of plaintiff's debt on the

January 3, 1972 Lake Forest College promissory note was reduced to $147.11, and that every

offset thereafter grossly exceeded that amount, resulting in unlawful offset amounts from

2006-2018 totaling $8,724.52 ($8,871.63-$147.11).

## COUNT IV-Refund of Tax Offsets
### (Money Judgment)

109.    Plaintiff repeats and realleges each of the foregoing paragraphs, as if fully set forth

herein.

110.    Plaintiff Roy L. Pearson, Jr. has been the subject of federal and state tax return

seizures by the U.S. Department of Treasury and the Finance and Revenue Department of the

District of Columbia government, acting on behalf of the U.S. Department of Education,

since 1998 in the following amounts, totaling $9,841.82:

| Date | Federal Tax Refund Offset | | D.C. Tax Refund Offset |
|---|---|---|---|
| 09/20/98 | $40.95 | | |
| 07/20/01 | $300.00 | | |
| 06/25/04 | $506.24 | | |
| 03/03/06 | $1,624.70 | | |
| 07/03/09 | $592.00 | | |
| 12/31/10 | $56.26 | | |
| 04/29/11 | $258.51 | | |
| 04/29/12 | $2,477.00 | | |
| 01/23/13 | $1,536.00 | | |
| 06/20/16 | $349.86 | | |
| 04/29/17 | $1,750.00 | | |
| 04/29/18 | $227.30 | | $123.00 |
| | $9,718.82 | + | $123.00 = $9,841.82 |

111.    When the IRS seized plaintiff's tax refund of $506.24 on June 25, 2004, the

balance of plaintiff's debt on the January 3, 1972 Lake Forest College promissory note was

reduced to $147.11. Every offset thereafter grossly exceeded that amount, resulting in unlawful offset amounts from 2004-2018 totaling $8,724.52.

112.    Plaintiff is therefore entitled to a declaration that he is owed a refund of $8,724.52 ($8,871.63-$147.11), and to a money judgment in that amount. 28 U.S.C. § 2202; 28 U.S.C. § 1346; 20 U.S.C. § 1082(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment and order the following relief:

A.      Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, that Plaintiff's alleged student loan debts to Southern Illinois University, Lake Forest College and Northwestern University are not legally enforceable or certifiable for tax refund or other offsets;

B.      Further declare that certification of each such alleged debt is unlawful under the Debt Collection Improvement Act;

C.      Further declare that the Department of Education is obligated to stop certifying and recertifying each of the alleged student loan debts of plaintiff;

D.      Strike the Department of Education's final determination that Plaintiff's alleged student loan debts are legally enforceable, as arbitrary and capricious, unlawful, and in violation of the Administrative Procedure Act;

E.      Order ancillary relief under 28 U.S.C. § 2202, including refund of the $8,724.52 in excess tax offsets already seized from Plaintiff pursuant to the unlawful certifications for offset;

F.      Retain jurisdiction of this matter until Defendants have fulfilled their legal and

Court-ordered obligations; as set forth in this Prayer for Relief and any subsequent

orders of this Court; and

G.        Granting such other and further relief as the Court may deem just and proper,

including plaintiff's costs of litigation.

Respectfully submitted,

/s/ *Roy L. Pearson, Jr.*

Roy L. Pearson, Jr. (Bar No. 955948)
3012 Pineview Court, N.E.
Washington, D.C. 20018
Telephone: (202) 269-1191

Counsel for Plaintiff

Dated: August 27, 2019

# <u>A T T A C H M E N T   A</u>
## (Order of Dismissal, *Northwestern Univ. v. Pearson*, C.A. No. 8285-83 (D.C.Super.Ct. Dec. 20, 1984)



ATTACHMENT A

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

FILED
IN OPEN COURT
DEC 20 1984
Clerk of the
of the Court of Columbia
Washington, D.C.

NORTHWESTERN UNIVERSITY

Plaintiff,

v.

Civil Action No. 8285-83-

ROY PEARSON

Defendant.

RECEIVED FOR DOCKETING
Civil Clerk's Office
NOV   DEC 26 1984
Superior Court of the
District of Columbia

ORDER

Upon consideration of defendant-counterclaimant's application to dismiss the complaint and to enter a default on the counterclaim, the Court finds and concludes as follows:

1. On July 4, 1984, the defendant served and filed interrogatories and requests for production of documents.

2. On July 31 and August 6, 1984, the defendant contacted plaintiff's counsel by telephone and letter in an effort to facilitate the service of the requested discovery. Plaintiff failed to respond to the communications.

3. On September 15, 1984, defendant filed a motion to compel the overdue discovery. No opposition to the motion was filed.

4. This Court's order compelling discovery required that the overdue discovery be served and filed by November 2, 1984, and that plaintiff pay $85.00 in attorney's fees and costs by the same date. Plaintiff has filed no other documents since the Court's order.

5. Plaintiff's lawsuit alleges defendant's default in the payment of certain promissory notes. Defendant's discovery seeks, inter alia, production of the alleged promissory notes. Plaintiff's failure to provide the requested discovery is conscious and intentional and prejudices defendant in defending against plaintiff's allegations. The cut-off date for discovery in this matter has now passed.

6. Plaintiff has failed to respond to letters, telephone calls, and a formal order of this Court. It has not appeared, despite written notice to its counsel, to oppose this application. The sanction of attorney's fees has been

MFLD

DEC 26 1984

27

- 2 -

considered and previously imposed.  It has not been paid, nor has discovery been provided.

7.  Plaintiff's course of conduct has itself frustrated a decision on the merits and evidences an abandonment of its claims and defenses.  Any sanction other than dismissal of the complaint and entry of a default on defendant's counterclaim would have the undesirable consequence of protracting abandoned litigation and clogging the civil docket of the Superior Court.  It is therefore this __20__ day of __December__, 1984.

, ORDERED, that plaintiff's complaint be and it hereby is, DISMISSED WITH PREJUDICE; and it is,

FURTHER ORDERED, that a default be, and it hereby is, entered on defendant's counterclaim; and it is,

FURTHER ORDERED, that defendant's jury fee be returned to his by mail to: 304 Anacostia Road, S.E., #202, Washington, D.C. 20019.

SO ORDERED.

Judge, D.C. Superior Court

copies:  Roy Pearson
304 Anacostia Road, S.E.
#202
Washington, D.C. 20019

Robert L. Kay, Esquire
Protas, Kay, Spivok & Protas
6001 Montrose Road
Suite 700
Rockville, Maryland 20852

# A T T A C H M E N T   B
## (Hearing Decision, Dept. of Education, Nov. 3, 2014)



**FSA**
FEDERAL
STUDENT AID

*We Help Put America Through School*

November 3, 2014

Mr. Roy Pearson
3012 Pineview Court N.E.
Washington, DC  20018-1617

Hearing Decision
Federal Insured Student Loans
National Direct Student Loan
National Defense Student Loan
Federal Family Education Loan
Debt No.:    4880415
                   4880423
                   4880432
                   4880441
                   4880448
Account No.:  1001523891

Dear Mr. Pearson:

This is in response to your recent request for a hearing on your objection to offset your
federal and/or state tax refunds and other payments for a debt held by the
U.S. Department of Education, Federal Student Aid. This decision was rendered after a
review of the written records you submitted.

Your objection(s) to offset:

- You state that you have repaid all or a portion of this debt.

- You believe this debt is not an enforceable debt.

Evidence considered:

We reviewed the documents you provided and information in the Department's electronic
records regarding your account.

Our records indicate that in 1973, you received a Federal Insured Student Loan (FISL) in
the amount of $2,500.00 to attend Northwestern University. In 1975, you received a FISL
in the amount of $1,250.00 to attend Northwestern University. The loans were later
declared in default, and the Department's Default Resolution Group paid an insurance
claim to the lender. The loans entered our database on December 29, 1980. At the time of
assignment, the balance was certified to be $3,750.00 in unpaid principal and $176.19 in

Page 2 – Mr. Roy Pearson

accrued interest. Interest continues to accrue at the rates stipulated on the promissory notes.

You received a National Direct Student Loan from Southern Illinois University - Carbondale. The total amount advanced was $450.00. The loan was declared in default, and the school later assigned this account to the Department's Default Resolution Group. The loan entered our database on July 28, 1981. At the time of assignment, the balance was certified to be $450.00 in unpaid principal and $82.02 in accrued interest. Interest continues to accrue at the rate stipulated on the promissory note.

In 1972, you received a National Defense Student Loan from Lake Forest College. The total amount advanced was $610.00. The loan was declared in default, and the school later assigned this account to the Department's Default Resolution Group. The loan entered our database on July 2, 1983. At the time of assignment, the balance was certified to be $610.00 in unpaid principal and $50.33 in accrued interest. Interest continues to accrue at the rate stipulated on the promissory note.

In 1980, you received a loan made under the Federal Family Education Loan Program in the amount of $3,450.00 to attend Northwestern University. The loan was later declared in default, and the Illinois Student Assistance Commission (ISAC), the guaranty agency, paid an insurance claim to the lender. Interest was capitalized, increasing the principal balance. Total credits to this account while it was held by ISAC were $46.60. Ordinarily credits are applied first to accrued interest and fees, and then to unpaid principal. ISAC subsequently assigned the account to the Department's Default Resolution Group. The loan entered our database on January 9, 1991. At the time of assignment, the balance was certified to be $3,550.57 in unpaid principal, $2,436.14 in accrued interest, and $3.80 in fees. Interest continues to accrue at the rate stipulated on the promissory note.

Since the Department's Default Resolution Group has held this account, payments totaling $3,368.66 have been credited, with the last offset payment of $258.51 received on April 29, 2011.

Because the Department holds the promissory notes and other records supporting the existence of this debt, you have the burden to prove that the debt is not owed. We do not consider the evidence that has been presented sufficient to show that the debt is not owed.

Decision:

The Department finds your debt is legally enforceable and will request the U.S. Department of the Treasury to offset your federal and/or state tax refunds and other payments.

Page 3 – Mr. Roy Pearson

Consequences of the decision and further rights:

The amount needed to satisfy the outstanding balance on this account is $23,843.79 as of October 28, 2014. This balance includes $8,360.57 in unpaid principal, $15,396.19 in accrued interest, and $87.03 in fees.

Because the Department finds your student aid obligation past due and legally enforceable, the Department will refer this debt to the U.S. Department of the Treasury for offset. However, you still have the option to avoid offset of your federal and/or state tax refunds and other payments by sending payment in the amount of $23,843.79 to the address below or by entering into a repayment agreement satisfactory to the Department, making an initial payment within seven days of the date of this letter, and continuing to make timely payments.

Send payments to:

U.S. Department of Education
National Payment Center
P.O. Box 105028
Atlanta, GA  30348-5028

Please include your name and account number on the front of all payment instruments.

For further information, you should contact the Department's Default Resolution Group at 1-800-621-3115.

If you disagree with this decision, and your federal and/or state tax refund or other payment is offset, you may have this decision reviewed by bringing a lawsuit in federal district court.

For more information, visit our Web site at www.myeddebt.com.

This action is taken to collect a loan or grant obligation held by the Department. It is totally separate from any notice of proposed offset from a guaranty agency. You must contact that agency if you object to collection of a loan held by a guaranty agency.

Sincerely,

Hearing Official
Borrower Services